**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
MIDLAND DIVISION**

| | | |
|---|---|---|
| DILLIAN STOUTE, individually and on behalf of all others similarly situated | § | Docket No. 7:18-cv-228 |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | JURY TRIAL DEMANDED |
| | § | |
| BISON LOGISTICS, LLC d/b/a SOURCE ENERGY SOLUTIONS | § | |
| | § | FLSA COLLECTIVE ACTION |
| Defendant. | § | |

**ORIGINAL COMPLAINT**

1. Dillian Stoute (Stoute) brings this lawsuit to recover unpaid overtime wages and other damages from Bison Logistics, LLC d/b/a Source Energy Solutions (Source) under the Fair Labor Standards Act (FLSA). *See* 29 U.S.C. § 201 *et seq*.

2. During the relevant period, Source utilized the services of oilfield personnel like Stoute to work on its behalf.

3. Many of the oilfield workers Source employed, including Stoute, were staffed by Source to third-party entities.

4. Stoute, and the other oilfield personnel like him who worked for, or on behalf of Source, regularly worked more than 40 hours a week.

5. But Stoute and the other oilfield workers like him were not paid overtime.

6. Instead of paying overtime as required by the FLSA, Source improperly classified these workers as independent contractors and paid them a daily rate with no overtime compensation in violation of the FLSA.

7. Stoute brings this collective action to recover the unpaid overtime wages and other damages owed to him and other oilfield workers like him.

## JURISDICTION AND VENUE

8. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

10. Source conducts substantial business operations in this District and Division.

11. Source maintains its headquarters in Midland, Texas, located in this District and Division.

12. Stoute worked for Source within this District and Division.

13. Similarly situated potential class members worked for Source in this District and Division.

## THE PARTIES

14. During the relevant time period, Stoute worked for Source providing water transfer services.

15. Throughout his employment, Source paid Stoute a day-rate with no overtime compensation and classified him as an independent contractor.

16. Stoute's consent to be a party plaintiff is attached as Exhibit A.

17. Stoute brings this action on behalf of himself and all other similarly situated oilfield personnel who worked for, or on behalf of Source, who were classified as independent contractors and paid a day-rate with no overtime compensation.

18. Stoute and the oilfield workers like him were paid a flat amount for each day worked and did not receive overtime for all hours that they worked over 40 hours in a workweek in accordance with the FLSA.

19. The class of similarly situated employees sought to be certified is defined as follows:

> **All oilfield personnel that worked for Source Energy Solutions while classified as independent contractors and paid a day-rate**

**during the last three years.**

20. **Bison Logistics, LLC d/b/a Source Energy Solutions** is an Oklahoma limited liability corporation doing business in Texas and may be served by serving its registered agent for service of process, Blumberg Excelsior Corporate Services, Inc., at 725 Decker Prairie Drive, Austin, Texas 78746, or wherever it may be found.

## COVERAGE UNDER THE FLSA

21. At all times hereinafter mentioned, Source has been an employer within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

22. At all times hereinafter mentioned, Source has been part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

23. At all times hereinafter mentioned, Source has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1).

24. Source has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or were produced for commerce, such as oilfield equipment, hand tools, computers, automobiles, and cell phones.

25. Source's annual gross volume of sales made, or business done, has exceeded $1,000,000.00 in each of the past three years.

26. At all relevant times hereinafter mentioned, Stoute and the other oilfield workers like him were engaged in commerce or in the production of goods for commerce.

27. At all relevant times hereinafter mentioned, Source treated Stoute (and each of the oilfield workers like him) as an employee and uniformly applied their day-rate pay practice to Stoute and the oilfield workers like him.

28. The misclassification of Stoute and the other oilfield workers like him as independent contractors does not alter their status as employees for purposes of this FLSA collective action.

## FACTS

29. Source provides flow back and water transfer support for the oil and gas industry around the Permian Basin.

30. To provide services to many of its customers, source retains workers (including, but not limited to, Flowback Operators, Water Transfer Operators, Hose Deployment and Pump Operators) to perform services on its behalf.

31. During the relevant period, Source contracted with third-party entities to provide it with oilfield personnel to work for it or on its behalf, like Stoute.

32. Source and the third-party entities who staffed oilfield personnel to Source to work for or on its behalf jointly determine and share control over the terms and conditions of employment.

33. Source and the third-party entities who staffed oilfield personnel to Source to work for or on its behalf jointly hired and fired, supervised and controlled, set pay, determined hours, and approved time sheets with respect to these workers.

34. Source is a joint employer of the oilfield personnel staffed to it by the third-party entities.

35. Many of the oilfield personnel staffed to Source, including Stoute, were paid on a day-rate basis, misclassified as independent contractors, and make up the proposed Putative Class.

36. Even if their job titles and precise job duties differed, Source subjected Stoute and the other oilfield workers like him to the same or similar illegal pay practices for similar work.

37. Specifically, Source classified all similarly situated oilfield workers as independent contractors and paid them a flat sum for each day worked, regardless of the number of hours that they worked that day (or in that workweek).

38. Source uniformly failed to pay overtime for the overtime hours Stoute and the other oilfield workers like him worked.

39. For example, during the relevant period Stoute worked for Source as a Poly Supervisor.

40. Throughout his employment, Source classified Stoute as an independent contractor and paid him on a day-rate basis.

41. Source directed Stoute to work 15 (or more) hours a day for as many as seven days in a week.

42. Stoute worked well in excess of 40 hours each week while employed by Source, often for weeks at time.

43. The work Stoute performed was an essential part of Source's core business.

44. During Stoute's employment with Source and while he was classified as an independent contractor, Source exercised control over all aspects of his job.

45. Source did not require any substantial investment by Stoute for him to perform the work required of him.

46. Source controlled Stoute's opportunity for profit and loss by dictating the days and hours he worked and the rate he was paid.

47. Stoute was not required to possess any unique or specialized skillset (other than that maintained by all other workers in his respective position) to perform his job duties.

48. While working for Source, Source controlled all the significant or meaningful aspects of the job duties performed by Stoute.

49. Source exercised control over the hours and locations Stoute worked, tools and equipment used, and rates of pay received.

50. Even though Stoute often worked away from Source's offices without the presence of

a direct supervisor employed by Source, Source still controlled significant aspects of Stoute's job activities by enforcing mandatory compliance with its policies and procedures.

51. No real investment was required of Stoute to perform his job.

52. More often than not, Stoute utilized equipment provided by Source to perform his job duties.

53. Stoute did not provide the significant equipment he worked with on a daily basis. Source or the operator made the large capital investments in buildings, machines, equipment, tools, and supplied in the business in which Stoute worked.

54. Stoute did not incur operating expenses like rent, payroll, marketing, and insurance.

55. Stoute was economically dependent on Source during his employment with Source.

56. Source set Stoute's rates of pay, his work schedule, and effectively prevented (or outright prohibited) him from working other jobs for other companies while he was working on jobs for Source.

57. Source directly determined Stoute's opportunity for profit and loss.

58. Stoute's earning opportunity was based on the number of days Source scheduled him to work.

59. Very little skill, training, or initiative was required of Stoute to perform his job duties.

60. Indeed, the daily and weekly activities of the oilfield workers were routine and largely governed by standardized plans, procedures, and checklists created by Source.

61. Virtually every job function was pre-determined by Source, including the tools and equipment to use at a job site, the data to compile, the schedule of work, and related work duties.

62. The oilfield workers were prohibited from varying their job duties outside of the pre-determined parameters and were required to follow Source's policies, procedures, and directives.

63. Stoute performed routine job duties that were largely dictated by Source.

64. Stoute was not employed by Source on a project-by-project basis.

65. In fact, while Stoute was classified as an independent contractor, he was regularly on call for Source and was expected to drop everything and work whenever needed.

66. All of the oilfield workers working for, or on behalf of Source, perform similar job duties and are subjected to the same or similar policies and procedures, which dictate the day-to-day activities performed by each person, regardless of the third-party entity they were staffed through.

67. All of the oilfield workers working for, or on behalf of Source, also worked similar hours and were denied overtime as a result of the same illegal pay practice, regardless of the third-party entity they were staffed through.

68. All of the oilfield workers working for, or on behalf of Source, all worked in excess of 40 hours each week and were often scheduled to work 12-hour shifts (at a minimum) for weeks at a time, regardless of the third-party entity they were staffed through.

69. Instead of paying them overtime, Source paid Stoute and the other oilfield workers like him a day-rate and misclassified them as independent contractors.

70. Source denied Stoute and the other oilfield workers like him overtime for hours worked in excess of 40 hours in a single workweek.

71. Stoute and the other oilfield workers like him were never paid on a salary basis. They never received any guaranteed weekly compensation from Source irrespective of days worked (i.e., the only compensation they received was the day-rate they were assigned for all hours worked in a single day or week).

72. Source's policy of classifying Stoute and the other oilfield workers like him as independent contractors and failing to pay them overtime, violates the FLSA because these workers are, for all purposes, non-exempt workers.

73. It is undisputed that the oilfield workers are working long hours in the oilfield.

74. Because Stoute and the other oilfield workers like him were misclassified as independent contractors by Source, they should receive overtime for all hours worked in excess of 40 hours in each workweek.

75. Source's day-rate system violates the FLSA because Stoute and the other oilfield workers like him did not receive any overtime pay for hours worked over 40 hours each week.

**FLSA VIOLATIONS**

76. As set forth herein, Source has violated, and is violating, Section 7 of the FLSA, 29 U.S.C. § 207, by employing employees for workweeks longer than 40 hours without paying them overtime.

77. Source knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay Stoute and the other oilfield workers like him overtime compensation.

78. Source's failure to pay overtime compensation to these workers was neither reasonable, nor was the decision not to pay overtime made in good faith.

79. Accordingly, Stoute and the other oilfield workers like him are entitled to overtime wages under the FLSA in an amount equal to 1 and ½ times their rate of pay, plus liquidated damages, attorney's fees and costs.

**COLLECTIVE ACTION ALLEGATIONS**

80. The illegal pay practices Source imposed on Stoute were likewise imposed on the other oilfield workers working for, or on behalf of, Source through third-party entities.

81. Numerous individuals were victimized by Source's pattern, practice, and policy which is in willful violation of the FLSA.

82. Based on his experiences and tenure with Source, Stoute is aware that such illegal practices were imposed on the members of the Putative Class.

83. Stoute and the other oilfield workers like him were all improperly classified as independent contractors and not afforded the overtime compensation when they worked in excess of forty 40 per week.

84. Source's failure to pay wages and overtime compensation at the rates required by federal law result from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of any of the oilfield workers like Stoute.

85. Stoute's experiences are therefore typical of the other oilfield workers who worked for, or on behalf of, Source.

86. The specific job titles or precise job locations of the various members of the Putative Class do not prevent class or collective treatment.

87. Stoute has no interests contrary to, or in conflict with, the members of the Putative Class. Like each member of the Putative Class, Stoute has an interest in obtaining the unpaid overtime wages owed under federal law.

88. A collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

89. Absent this action, many members of the Putative Class likely will not obtain redress of their injuries and Source will reap the unjust benefits of violating the FLSA.

90. Furthermore, even if some of the members of the Putative Class could afford individual litigation against Source, it would be unduly burdensome to the judicial system.

91. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the Putative Class and provide for judicial consistency.

92. Stoute's claims are similar to the claims of the other oilfield workers who worked for, or on behalf of, Source who were classified as independent contractors and paid a day-rate with no

overtime compensation. Stoute and the other oilfield workers like him sustained damages arising out of Source's illegal and uniform employment policy.

93. Stoute knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective action.

94. Even if the number of hours worked by the oilfield workers like Stoute varies, the proof and method for calculating damages is common.

95. Further, there is no detraction from the common nucleus of liability facts.

## JURY DEMAND

96. Stoute demands a trial by jury.

## RELIEF SOUGHT

97. WHEREFORE, Stoute prays for judgment against Source as follows:

a. An order allowing this action to proceed as a collective action under the FLSA and directing notice to all oilfield personnel who Source while classified as independent contractors and paid a day-rate during the last three years;

b. For an Order pursuant to Section 16(b) of the FLSA finding Source liable for unpaid back wages due to Stoute and the oilfield workers like him for liquidated damages equal in amount to their unpaid compensation;

c. For an Order awarding attorneys' fees, costs and pre- and post-judgment interest; and

d. For an Order granting such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: */s/ Michael A. Josephson*

**Michael A. Josephson**
Texas State Bar No. 24014780
**Andrew Dunlap**
Texas State Bar No. 24078444
**Richard M. Schreiber**
Texas State Bar No. 24056278
**JOSEPHSON DUNLAP, LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com
rschreiber@mybackwages.com

**AND**

**Richard J. (Rex) Burch**
Texas State Bar No. 24001807
**BRUCKNER BURCH PLLC**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

**ATTORNEYS IN CHARGE FOR PLAINTIFF**